UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARION WADE FRYE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, *et al.*, <br><br> Defendant. | Case No. 25-cv-2080 (CRC) |
| **MARION WADE FRYE**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, *et al.*, <br><br> Defendant. | Case No. 25-cv-2897 (CRC) |

**OPINION**

South Carolina inmate Marion Wade Frye, proceeding *pro se*, brings two nearly identical cases against a host of South Carolina officials and private parties—as well as the United States and three federal agencies—stemming mainly from the alleged implantation of a "telemetry system" into his brain during a surgical procedure at a state hospital. Because all of the events described in Frye's complaints appear to have taken place in South Carolina and none happened in Washington, D.C., venue is improper in this Court. And because Frye has filed several similar cases in federal court in South Carolina, the Court will exercise its discretion to dismiss both cases rather than add to the volume of existing litigation in the Palmetto State by transferring them there.

## I.    Background

What follows is a brief summary of the nearly identical allegations in Frye's complaints

in the two cases.  Wherever possible, the Court identifies the correctional facility or hospital

where Frye alleges the events took place and when he says they occurred.

Frye's allegations center on a surgical procedure that he underwent for a nasal fracture in

October 2022, at Midlands Hospital in Columbia, South Carolina.  He claims that during the

procedure, a "Neurological Telemetry System" was implanted into his brain, Compl., 25-cv-

2080 at 37, which allowed prison officials to read his mind, see id. at 56.  He maintains the South

Carolina Department of Corrections proceeded to "send[] . . . pain sensations" through the device

for amusement.  Id. at 55.  He adds that officials can cause his "[e]ars to ring" and "interfer[e]

with" his "digestive system" through the telemetry system.  Id. at 56.  When he raised concerns

about the device, Frye says, the South Carolina Department of Corrections retaliated by housing

him with dangerous and larcenous inmates.  Id. at 40.

Frye's complaint also includes claims of legal malpractice.  For example, he alleges that

his lawyer failed to complain to federal agencies about the device, intentionally allowed the

statute of limitations to run on certain claims, and denied Frye access to a private investigator.

See id. at 67–69.

Frye also makes a number of allegations unrelated to the telemetry device.  For instance,

Frye claims that between October 2022 and March 2023, he did not receive a requested MRI

following pain in his urinary tract.  Id. at 45.  In March 2023, he claims that officials at the Evans

Correctional Institution in Bennettsville, South Carolina, "[h]azed and tormented" him.  Id.  At

the Ridgeland Correctional Institution in Ridgeland, South Carolina, where Frye was transferred

following his stint at Evans, he claims that he was denied blankets, pillows, bed linens, and the

opportunity to brush his teeth as retaliation for refusing to enter the general population. Id. at 46. When he was later forced to enter the general population at Ridgeland—which he says occurred without a proper classification review—he went on a hunger strike, during which he was ignored by the staff. Id. Then, in September 2023, Frye claims that two correctional officers cuffed his hands behind his back and threatened to break his fingers. Id. at 49. Also, beginning in September 2023 at the Broad River Correctional Institution in Columbia, South Carolina, where he was transferred after Ridgeland, Frye alleges that he was overcharged for postal mail, had his outgoing mail "sabotaged," and was denied refunds for returned correspondence. Id. at 50, 52– 55, 59. These events purportedly continued through September 2024. Id. In March and April 2024, Frye recounts a series of thefts of his canteen money, his household products, and his ID, which he claims prison personnel failed to investigate. Id. at 49, 57–59. And in June 2024 at Tyger Correctional Facility in Enoree, South Carolina, he claims that while he was kneeling to pray in the shower, correctional officers dragged him out of the shower with a dog leash. Id. at 51. At no point, so far as the Court can tell, does Frye describe any events that took place outside of South Carolina, much less in the District of Columbia. In addition to many individual defendants and South Carolina agencies, Frye brings claims against the United States of America, the Food & Drug Administration, the U.S. Department of Justice, and the U.S. Department of Health and Human Services.

   Frye filed his complaint in 25-cv-2080 in March 2025. The clerk of court terminated the case in error in August, as the filing fee that Frye submitted was misapplied to a different case. The case was reopened in September 2025 after the error was identified. Frye filed 25-cv-2897 following the closure of 25-cv-2080 in August 2025. The case was assigned to this Court as related to 25-cv-2080. In both cases, Frye has moved for a temporary restraining order. In 25-

cv-2080, he has also filed a motion for a protective order and a motion to appoint counsel, and in 25-cv-2897, he has moved for discovery.  The Clerk's office has not issued a summons as to any defendant in either case, so no service of process has occurred.

## II.   Legal Standards

### A.  Venue

Venue for a civil action is proper in a "judicial district in which any defendant residents, if all defendants are residents of the State in which the district is located; a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[;] or if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction[.]"  28 U.S.C. § 1391.  Courts in this jurisdiction must examine the issue of venue carefully "to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."  Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).

When venue is improper, the decision whether to dismiss the case or transfer it "is committed to the sound discretion of the district court."  McCain v. Bank of Am., 13 F. Supp. 3d 45, 55 (D.D.C. 2014) (citing Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983) and Corbett v. Jennifer, 888 F. Supp. 2d 42, 46 (D.D.C. 2012)).  And although "the interest[s] of justice generally require[] transferring a case to the appropriate judicial district in lieu of dismissal[,]" Abraham v. Burwell, 110 F. Supp. 3d 25, 30 (D.D.C. 2015) (citation omitted), dismissal "is often appropriate when the outcome is foreordained . . . or the complaint has serious substantive problems," Fam v. Bank of Am. NA (USA), 236 F. Supp. 3d 397, 409 (D.D.C. 2017) (internal quotation marks omitted) (citations omitted).

B. Pro Se Pleading Standards

A *pro se* "litigant's complaint is held to a less stringent standard than formal pleadings drafted by lawyers." Jarrell v. Tisch, 656 F. Supp. 237, 239 (D.D.C. 1987) (citing Redwood v. Council of the District of Columbia, 679 F.2d 931, 933 (D.C. Cir. 1982)). But this standard does not allow a *pro se* litigant "to ignore the Federal Rules of Civil Procedure or expect the [c]ourt to decide what claims a plaintiff may or may not want to assert." Id. A *pro se* plaintiff "must present a claim on which the court can grant relief." Chandler v. Roche, 215 F.Supp.2d 166, 168 (D.D.C. 2002) (citation omitted).

III.  **Analysis**

A.  Venue

For venue to be proper in the District of Columbia, all defendants must reside here, a substantial part of the events or omissions must have occurred here, or there must be no other proper district. See 28 U.S.C. § 1391.

Taking it from the top, clearly not all defendants reside here, so venue is not proper in the District of Columbia on that ground.

The next possibility is that venue might be proper because a significant portion of the events or omissions occurred in the District of Columbia. However, at no point does either complaint indicate that *any* event or omission occurred here. This is not even a case, seen frequently in this district, where a plaintiff tries to manufacture venue in Washington, D.C. by suing federal agencies with responsibility for regulating or overseeing the conduct at issue. See e.g., Aftab v. Gonzalez, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (rejecting venue where "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing" individuals involved in

5

the events).  The defendant federal agencies here—HHS, FDA, and DOJ—do not appear to play

any role whatsoever in overseeing or regulating the South Carolina officials about whom Frye

complains.  Thus, Frye falls far short of alleging any events or omission that make venue proper

in this district.

Finally, venue would be proper in the District of Columbia if it did not lie anywhere else.

But here, there is a proper venue: the District of South Carolina.  All the significant events

occurred there.  Accordingly, insofar as Frye's claims have any merit, they ought to have been

brought in South Carolina.

B.  Dismissal

Rather than transfer the case for lack of venue, the Court will dismiss it.  Although "the

interest[s] of justice generally require transferring a case to the appropriate judicial district in lieu

of dismissal," Abraham, 110 F. Supp. 3d at 30 (citation omitted), dismissal "is often appropriate

when the outcome is foreordained . . . or the complaint has serious substantive problems," Fam,

236 F. Supp. 3d at 409 (internal quotation marks and citations omitted).  Courts may therefore

"peek at the merits" when deciding whether to dismiss for improper venue.  Laukus v. United

States, 691 F.Supp.2d 119, 127 (D.D.C. 2010) (citation omitted).

As Frye acknowledges in his complaint, he has litigated several versions of many of these

claims in the District of South Carolina.[1]  He has also brought claims in South Carolina state

courts, which he seems to indicate are similar in nature.  See Compl., 25-cv-2080 at 38–39.  At

least one of the federal cases has resulted in dismissal of claims regarding the medical device as

---

[1] See Frye v. Ramp, 4:22-cv-03028 (D.S.C. Sep. 8, 2022); Frye v. Sterling, 5:24-cv-01585 (D.S.C. Mar. 29, 2024); and Frye v. S.C. Dep't of Corr., 5:24-cv-1893 (D.S.C. Apr. 12, 2024).  Frye has also noticed appeals to the Fourth Circuit on multiple occasions.  See, e.g., Frye v. S.C. Dep't of Corr., No. 25-06519 (4th Cir. June 24, 2025).  At least one of his appeals has been dismissed for failure to prosecute.  See Frye v. Warden, No. 25-6459 (4th Cir. Sep. 4, 2025).

frivolous.  See Frye v. S.C. Dep't of Corr., No. 5:24-cv-1893, 2025 WL 782544, at *2 (D.S.C.

Mar. 12, 2025).  And to the Court's eye, many of the other claims also would be dismissed for

failure to state a claim upon transfer, given the, at times, very general and conclusory pleading.

See, e.g., Compl., 25-cv-2080 at 45 (alleging that Frye was "hazed").  Further still, other claims,

such as the attorney and medical malpractice claims, appear not to belong in federal court at all,

since there is no federal question or diversity of parties on the face of the complaint.  See 28

U.S.C §§ 1331, 1332.  And should there be any claims in these cases that have not already been

presented to courts in South Carolina, Frye is free to seek leave to amend his complaint in any of

his ongoing cases to include those claims or file a new complaint in the proper venue.

　　　All told, the interests of justice in this case weigh against transfer given the near-serial

nature of Frye's litigation history and the fact that many of his claims have already been

adjudicated while many others plainly lack merit.  And "[c]onsiderations of comity and the

orderly administration of justice" counsel in favor of dismissal for those same reasons.

Washington Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) (citing

Hilton Hotels Corp. v. Weaver, 325 F.2d 1010, 1010 (D.C. Cir. 1963) (per curiam), cert. denied,

376 U.S. 951 (1964)).

　　　Although *sua sponte* dismissal for lack of venue generally is not permitted, the D.C.

Circuit has blessed the practice when it occurs before the complaint has been served, as is the

case here.  That is because "a defendant who never had notice of the suit cannot be said to have

waived an affirmative defense."  Buchanan v. Manley, 145 F. 3d 386, 388 (D.C. Cir. 1998) (per

curiam).  Further, the "possible unfairness to a plaintiff of rejecting a suit 'after considerable

time and expense has been invested in it'[] [is] not present when the case is dismissed at the

outset."  Id. (internal citation and quotation omitted).  None of the defendants in either case have

been served.  Therefore, none of them could have waived improper venue as an affirmative

defense, and there has been no investment on Frye's part beyond the initial complaint and filing

fee.  The Court will, accordingly, dismiss both cases *sua sponte* for improper venue.

## IV.  Conclusion

For the foregoing reasons, the Court will dismiss both cases.  A separate Order shall

accompany this Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  October 30, 2025